IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID LAUDERMILCH; ERIC ROD; and JOHN T. WOLFE,<br><br>Plaintiffs,<br><br>v.<br><br>730 TEXAS TIMBERLANDS, II, LTD.; and GREENWOOD RESOURCES, INC.,<br><br>Defendants. | No. 4:22-CV-00423<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 17, 2022**

For more than forty years, select property owners in Potter County, Pennsylvania have granted owners of the 1,450 acres of working timberland adjacent to their land a "right-of-way" over their properties to access the timberland, which is otherwise landlocked. In exchange, the owners of the timberland assumed all responsibility for maintenance of the right-of-way. But the current owners of the individual properties believe that Defendants 730 Texas Timberlands, II, Ltd. and GreenWood Resources, Inc.—the owner of the timberland and the corporation contracted to manage it—failed to adequately maintain the right-of-way, causing it to fall into disrepair. Accordingly, the property owners sued, seeking a declaratory judgment and alleging breach of contract.

Before the Court now is the property owners' motion for a preliminary injunction: they ask the Court to enjoin the Defendants from using the right-of-way during the pendency of this case. But the property owners have not established either of the two preliminary factors required to justify preliminary relief—a reasonable probability of success on the merits and irreparable harm absent the injunction. Accordingly, the motion is denied.

I.   BACKGROUND

A.   Factual Background

Plaintiffs David Laudermilch, Eric Rod, and John T. Wolfe own separate parcels of land in Bingham Township, Potter County, Pennsylvania.[1] The Plaintiffs' properties abut a 1,450-acre plot of working timberland that Defendant 730 Texas owns as an investment property.[2] According to 730 Texas, the timberland is completely landlocked—it cannot be accessed by public road.[3] Per agreement with 730 Texas, Defendant GreenWood manages the timberland.[4]

The parties are successors in interest to a right-of-way agreement dated April 30, 1969 (the "ROW Agreement"), which provides the Defendants with a right-of-way to use subject portions of Cinder Hill Road—a private, gravel road on the Plaintiffs' properties—to access the timberland.[5] In addition, the ROW Agreement

---

[1] Doc. 1 ¶¶ 14–16.
[2] Doc. 12 ¶ 2; Doc. 13 ¶ 2.
[3] *Id*.
[4] *Id*.
[5] Doc. 1 ¶¶ 2, 25; Doc. 12 ¶¶ 2, 25; Doc. 13 ¶¶ 2, 25; *see also* Doc. 4-1, Ex. 1 (ROW Agreement).

2

imposes on 730 Texas full responsibility for maintenance of the subject portions of Cinder Hill Road.[6]

According to the Plaintiffs, due to 730 Texas's use of the right-of-way, Cinder Hill Road has "significantly deteriorated over time and is currently in dire need of repair."[7] The Plaintiffs allege that for at least the past five years, they have "repeatedly informed [the] Defendants that their subject portions of Cinder Hill Road were in disrepair and required significant maintenance," but the Defendants "have ignored [the] Plaintiffs' inquiries."[8]

The Defendants dispute this, asserting that they have always fulfilled their obligations under the ROW Agreement.[9] According to the Defendants, Plaintiff Rod first raised concerns regarding the condition of the right-of-way in October 2020.[10] Rod met with GreenWood's U.S. Northeast Manager, Todd Sparks, and a contractor to discuss road repair and maintenance of Rod's subject portion of Cinder Hill Road.[11] Sparks informed Rod that to complete the needed repairs, the roadway would need to be widened.[12]

---

[6] Doc. 4-1, Ex. 1 (ROW Agreement) at 1 ("It is understood and agreed that all responsibilities of maintenance of the said right-of-way shall be the responsibility of [730 Texas].").
[7] Doc. 1 ¶ 31.
[8] *Id.* ¶¶ 6, 41.
[9] Doc. 12 ¶¶ 31, 57; Doc. 13 ¶¶ 31, 57.
[10] Doc. 12 ¶ 6; Doc. 13 ¶ 6.
[11] Doc. 1 ¶¶ 33–35; Doc. 12 ¶¶ 33–35; Doc. 13 ¶¶ 33–35.
[12] Doc. 1 ¶ 36; Doc. 12 ¶ 36; Doc. 13 ¶ 36.

Following this meeting, Rod removed trees on his property located alongside Cinder Hill Road and loosened the corresponding frontage and roadway (the parties dispute whether Rod did this at Sparks's direction or on his own volition).[13] GreenWood's contractor then repaired the damaged portion of the road on Rod's property.[14] In the Plaintiffs' telling, this constituted a "temporary repair," after which Sparks "represented to Mr. Rod that he would return in April 2021 to rebuild the subject portion of Cinder Hill Road and install a permanent drainage system."[15] Conversely, the Defendants contend that GreenWood and its contractor "completed [the] required maintenance on the [right-of-way] by widening it, raising it, and crowning it,"[16] and deny representing to Rod that they would return in April 2021 to rebuild the roadway and install a new drainage system.[17]

Since GreenWood completed the December 2020 roadway repairs, there has been no further maintenance work on the road and the Defendants' use of the right-of-way has been minimal. GreenWood intended to survey the portion of the Cinder Hill Road covered by the right-of-way in the summer of 2021 and assess whether further maintenance was required.[18] Indeed, Sparks lined up a contractor for the expected work.[19] But after he received pointed comments from Rod—in an

---

[13] Id.
[14] Doc. 1 ¶ 38; Doc. 12 ¶ 38; Doc. 13 ¶ 38.
[15] Doc. 1 ¶ 38.
[16] Doc. 18 at 5.
[17] Doc. 12 ¶ 38; Doc. 13 ¶ 38; see also Doc. 18 at 5.
[18] Doc. 24.
[19] Id.

expletive-laden voicemail, Rod threatened to seek criminal prosecutions against anyone affiliated with the Defendants who entered his property—Sparks called off the prospective project.[20]

Further, in 2021, only one heavy vehicle associated with the Defendants' business operations traversed the right-of-way.[21] And to date, no heavy vehicles operating on the Defendants' behalf have accessed the right-of-way in 2022.[22] Based on recent construction on Plaintiff Laudermilch's property, it seems that over the past two years, most heavy vehicle traffic across the right-of-way has been for the Plaintiffs' benefit, independent of the Defendants' business operations.[23]

### B.   Procedural History

On March 21, 2022, the Plaintiffs initiated the instant action, seeking a declaratory judgment and bringing a claim for breach of contract.[24] Specifically, the Plaintiffs request a declaration from the Court that (a) "the Defendants are responsible for the maintenance of the Plaintiffs' subject portions of Cinder Hill Road under the ROW Agreement (i.e., the right-of-way identified in the ROW Agreement)," and (b) "the Defendants' failure to adequately repair and maintain the Plaintiffs' subject portions of Cinder Hill Road constitutes a breach of the

---

[20] *Id*.
[21] Doc. 18 at 5; *see also* Doc. 24.
[22] *Id*. The Defendants noted that in preparation for an expected sale in late 2022 or 2023, "a trailer will be used [at some point this year] to transport a piece of equipment to and from the Timberland." Doc. 18 at 5.
[23] Doc. 24.
[24] Doc. 1.

ROW Agreement."[25] Additionally, the Plaintiffs assert that the Defendants "failed to comply with their roadway maintenance obligations to the Plaintiffs under the ROW Agreement, and multiple oral promises to the Plaintiffs, by failing to adequately repair and maintain the Plaintiffs' subject portions of Cinder Hill Road."[26]

The following day, the Plaintiffs filed a motion for preliminary injunction, asking the Court to enjoin the Defendants "from accessing and using certain portions of Cinder Hill Road . . . as identified in the [ROW Agreement]."[27] After the Defendants filed their answers to the Complaint,[28] they submitted their opposition to the Plaintiffs' preliminary injunction motion.[29] The Court held a hearing on the motion on August 2, 2022.[30] Accordingly, the Plaintiffs' motion is now ripe for disposition.

## II.   LAW

Federal Rule of Civil Procedure 65 governs the granting of injunctive relief such as temporary restraining orders and preliminary injunctions. By design, this relief is extraordinary in nature and available only in limited circumstances.[31] The

---

[25]  *Id.* ¶ 51 (cleaned up).
[26]  *Id.* ¶ 57 (cleaned up).
[27]  Doc. 3; *see also* Doc. 4 (Plaintiffs' Mem. of Law in Support of Their Motion for Preliminary Injunction).
[28]  Doc. 12; Doc. 13.
[29]  Doc. 18.
[30]  Doc. 23; Doc. 24.
[31]  *See AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994), *cert. denied*, 514 U.S. 1103 (1995).

United States Court of Appeals for the Third Circuit has outlined four factors that a court ruling on a request for injunctive relief must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.[32]

In *Reilly v. City of Harrisburg*, the Third Circuit clarified the burden on a party seeking a preliminary injunction.[33] The Third Circuit specified that a party requesting preliminary relief must first demonstrate the following: (1) "it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)," and (2) "it is more likely than not to suffer irreparable harm in the absence of preliminary relief."[34] The Third Circuit continued that "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."[35]

---

[32] *Talbert v. Corizon Medical*, 605 F. App'x. 86, 87 (3d Cir. 2015).
[33] 858 F.3d 173 (3d Cir. 2017).
[34] *Id*. at 179.
[35] *Id*. Citing the United States Court of Appeals for the Second Circuit's 1995 ruling in *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995), the Defendants differentiate so-called "prohibitory injunctions," which seek only to preserve the status quo, and "mandatory injunctions," which "seek to alter the status quo by commanding some positive act" and therefore require an "enhanced" showing of both the likelihood of success on the merits and irreparable harm. Doc. 18 at 9–10. Although this distinction is well-grounded in the case law, it is of no consequence here: contrary to the Defendants' contention, the preliminary injunction the Plaintiffs seek—preventing the Defendants from accessing and

7

## III.   ANALYSIS

### A.   Likelihood of Success on the Merits

The Plaintiffs argue that they are likely to succeed on both their declaratory judgment and breach of contract claims because the ROW Agreement obligates the Defendants to maintain the portions of Cinder Hill Road on the Plaintiffs' properties, and the Defendants have failed to do so.[36] In response, the Defendants acknowledge that 730 Texas has "all responsibilities for maintenance" of the right-of-way but argue they have satisfied their obligations by "performing [the] required maintenance of the [right-of-way], most recently in December of 2020."[37]

Because the Defendants admit that under the ROW Agreement, "730 Texas is responsible for the maintenance of the [right-of-way],"[38] the only question before the Court is whether the Plaintiffs have shown a reasonable probability of success on the merits for its breach of contract claim.[39] To maintain a claim for breach of contract, a plaintiff must establish three things: "(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant

---

    using the portion of Cinder Hill Road covered by the ROW Agreement, *see* Doc. 3—is not a mandatory injunction as it does not compel any action by the Defendants.

[36] Doc. 4 at 9–11.
[37] Doc. 18 at 10.
[38] Doc. 12 ¶ 51; Doc. 13 ¶ 51.
[39] As discussed, for Count I (declaratory judgment), the Plaintiffs request a declaration that (a) the Defendants "are responsible for the maintenance of [the] Plaintiffs' subject portions of Cinder Hill Road under the ROW Agreement," and (b) the Defendants' "failure to adequately repair and maintain [the] subject portions of Cinder Hill Road constitutes a breach of the ROW Agreement." Doc. 1 ¶ 51. Per the Defendants' answers, the initial request is not in dispute. The second request simply duplicates an element of the Plaintiffs' breach of contract claim, and, as such, the Court addresses this issue only as part of the breach of contract analysis.

damages."[40] The Supreme Court of Pennsylvania has held that "it is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties."[41]

Here, the Plaintiffs contend that the Defendants failure "to adequately repair and maintain [the] Plaintiffs' subject portions of Cinder Hill Road" constitutes a breach of their "roadway maintenance obligations" under (a) the ROW Agreement, and (b) the "oral promises" GreenWood allegedly made to Rod regarding construction that would start in April 2021.[42] It is unclear from their pleadings whether the Plaintiffs consider the alleged oral promises to Rod distinct from the ROW Agreement—and, therefore, independently enforceable—or simply derivative of the existing ROW Agreement. But at the July 2022 hearing, Plaintiffs' counsel asserted that the ROW Agreement and alleged oral promises should be considered independent of one another.[43] As such, the Court addresses the ROW Agreement and oral promises separately.

### 1. The ROW Agreement

As discussed, the ROW Agreement provides that "all responsibilities of maintenance of the said right-of-way shall be the responsibility of [730 Texas]."[44]

---

[40] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).
[41] *Id.*
[42] Doc. 1 ¶¶ 57, 60.
[43] Doc. 24.
[44] Doc. 4-1, Ex. 1 (ROW Agreement) at 1.

The parties agree that that they are all bound by this agreement, and that this provision imposes on the Defendants all responsibilities for maintenance of the right-of-way.[45] The dispute here is whether the Defendants satisfied their obligations to maintain the right-of-way or breached the contract.

The Plaintiffs argue that the Defendants "continually fail to satisfy their road maintenance obligations, despite repeated requests for roadway maintenance by [the] Plaintiffs."[46] Based on the testimony and arguments at the August 2022 hearing, it seems the Plaintiffs believe that the Defendants breached the ROW Agreement in two respects: (1) they failed to perform routine maintenance, thus allowing general road degradation over time; and (2) they refused to build the specific drainage system Rod requested. The Court disagrees.[47]

First, during the August 2022 hearing, Rod testified that due to the Defendants' failure to maintain the right-of-way, the portion of Cinder Hill Road that runs across his property physically sank by nearly two feet, creating a drop-off from his driveway to the road that consistently damaged cars exiting his property.[48] But this account does not square with either the photographic evidence or the Defendants' unchallenged account of their use and repair of the roadway over the

---

[45] *See* Doc. 4 at 9–11, *accord* Doc. 18 at 10.
[46] Doc. 4 at 9–10; *see also* Doc. 1 ¶ 32 ("Plaintiffs, on repeated occasions, advised 730 Texas or GreenWood (as the 730 Texas Property manager) that their subject portions of Cinder Hill Road required repair and that roadway deterioration had caused ancillary damage to Plaintiffs' respective properties.").
[47] Doc. 24.
[48] *Id*.

past five years. The Defendants presented photos of the Rod property portion of Cinder Hill Road—taken in December 2019 and May 2022—and none of the photos depicts the two-feet road depression Rod described.[49] Further, GreenWood's U.S. Northeast Manager, Sparks, testified that since 2017, the Defendants have completed only two large timber sales (i.e., work necessitating heavy vehicle traffic on the roadway).[50] Following both sales, the Defendants performed maintenance on the roadway, grading and reshaping the road service, re-establishing the drainage ditches, and installing new pipes.[51] Based on this evidence, the Court finds that the Plaintiffs have not demonstrated a reasonable probability of success on their claim that the Defendants breached their contractual obligations under the ROW Agreement by failing to perform the required routine maintenance.

Second, the Plaintiffs argue that the ROW Agreement's maintenance provision obligates the Defendants to construct a "permanent drainage system."[52] At the August 2022 hearing, Rod testified that he proposed the installation of an underground drainage pipe (with a catch basin or rock quarry to direct the water runoff) that would ultimately connect to the township's drainage network.[53] The

---

[49] *See* Doc 26, Ex. Z (Photographs taken during DEC 2019 roadway maintenance); Doc. 26, Ex. GG (Photographs of and along right-of-way taken by Todd Sparks on 23 May 2022).
[50] Doc. 24.
[51] *Id*.
[52] Doc. 1 ¶ 38 (emphasis omitted).
[53] Doc. 24.

Defendants have not constructed this type of drainage system—instead, the Defendants simply re-established the ditches on either side of the roadway[54]—which the Plaintiffs believe constitutes a breach of the ROW Agreement.

But as the Defendants note, the ROW Agreement imposes on them "all responsibilities of *maintenance* of the . . . right-of-way,"[55] and "maintenance," commonly understood, means to "keep up" or "preserve."[56] According to the Defendants, this requirement creates "no obligation to improve" the right-of way.[57] The Court agrees. By all accounts, the relevant portion of Cinder Hill Road is, and always has been, a dirt road. The only drainage elements in place have been the ditches; there has never been a permanent underground drainage system. Rod may believe such a system advisable, but that does not mean that the maintenance obligations in the ROW Agreement require the Defendants to install one. Indeed, the Court believes they do not.

### 2.     The "Oral Promises"

Separately, the Plaintiffs argue that GreenWood "represented to Mr. Rod that [it] would return in April 2021 to rebuild the subject portion of Cinder Hill Road and install a permanent drainage system,"[58] thereby creating a separate

---

[54]   *Id*.
[55]   Doc. 4-1, Ex. 1 (ROW Agreement) at 1 (emphasis added).
[56]   Doc. 18 at 11 (citing *Webster's New Twentieth Century Dictionary of the English Language, Unabridged*, (2d Ed. 1968)).
[57]   *Id*.
[58]   Doc. 1 ¶ 38 (emphasis omitted).

enforceable promise to construct Rod's desired drainage system.[59] But even if the Court were to accept that GreenWood made this commitment,[60] they have not shown that they offered any consideration in exchange, rendering the commitment unenforceable.

Under Pennsylvania law, "[t]o be enforceable, a contract must be between parties who have manifested an intention to be bound by the terms of the agreement; have terms that are sufficiently definite to be specifically enforced; and be supported by consideration on both sides of the contract—that is, bargained-for exchange and either a benefit upon the promisor or a detriment to the promisee."[61] These elements apply to both written and oral contracts.[62]

Here, the Plaintiffs have not presented any evidence demonstrating a mutuality of consideration. According to the Plaintiffs, in late 2020, GreenWood's U.S. Northeast Manager, Sparks, "informed Mr. Rod that to repair the deteriorated portions of Cinder Hill Road property, the road first needed to be widened, and that to do so, Mr. Rod had to remove trees from his property."[63] Rod then "removed the

---

[59] Doc. 24.
[60] The Defendants acknowledge Rod's request "that an underground drainage system be installed to better manage the water runoff from the [right-of-way]," but they argue that they "never agreed to that request and have never promised to install it." Doc. 18 at 10. Regardless, at this stage, the Plaintiffs need not show by a preponderance of evidence that the Defendants made this commitment; they need only demonstrate a reasonable probability that this commitment was made. *Reilly*, 858 F.3d at 179.
[61] *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 311–12 (E.D. Pa. 2020) (citing *Channel Home Centers, Division of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986)).
[62] *Id*. at 312 n.5.
[63] Doc. 4 at 6.

13

at-issue trees from [his] property," and Sparks's contractor "completed a temporary repair and patch of the damaged . . . portion of Cinder Hill Road [and] installed a temporary drainage pipe."[64] It was at this point, the Plaintiffs assert, that either Sparks or his contractor "represented to Mr. Rod that he would return in April 2021 to rebuild the subject portion of Cinder Hill Road and install a permanent drainage system."[65] The Plaintiffs do not allege, and offer no evidence establishing, that they promised the Defendants anything in exchange for the commitment to install a permanent drainage system. There are likewise no allegations or evidence that the Plaintiffs took any detrimental actions in reliance on this alleged commitment—the only potentially detrimental actions (Rod's tree removal) occurred before Sparks or his contractor allegedly made the promise.

Absent evidence that the Plaintiffs, in exchange for the Defendants' alleged commitment to install a permanent drainage system, offered the Defendants' a benefit in return or assumed a detriment in reliance thereon, the Plaintiffs cannot show that this alleged commitment was enforceable independent of the ROW Agreement.[66] And absent that, the Plaintiffs cannot establish a reasonable probability of success for a breach of contract claim based solely on the alleged oral promise.

---

[64] *Id.* (citing Doc. 1 ¶¶ 36–37).
[65] *Id.* (citing Doc. 1 ¶ 38).
[66] *See Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. Super. 1993) ("It is axiomatic that before a contract may be found, *all* of the essential elements of a contract must exist, e.g., consideration.").

## B. Irreparable Harm

Even if the Plaintiffs could establish a reasonable probability of success on the merits, their motion for preliminary injunctive relief would nevertheless fail because they have not shown that they are "more likely than not to suffer irreparable harm in the absence of preliminary relief."[67] The Third Circuit has explained that a preliminary injunction is proper only when the plaintiff "demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages."[68] According to the Third Circuit, "the availability of adequate monetary damages belies a claim of irreparable injury"[69] because "[t]he requisite feared injury or harm must be irreparable—not merely serious or substantial."[70]

Here, the Plaintiffs argue that absent injunctive relief, they will be irreparably harmed because the Defendants' "continued use of the subject right-of-way—without completing the necessary maintenance—will further deteriorate and damage the road thus making the roadway dangerous and unusable."[71] The Court finds this argument unpersuasive.

---

[67] *Reilly*, 858 F.3d at 179.
[68] *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000).
[69] *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (internal quotation marks and brackets omitted).
[70] *ECRI v. McGraw-Hill*, 809 F.2d 223, 226 (3d Cir. 1987) (internal quotation marks omitted).
[71] Doc. 4 at 12–13.

As a preliminary matter, prevailing legal precedent establishes that a deprivation of a property right does not constitute irreparable harm *per se*. In *Consolidated Eagle, Ltd. v. BL GP, LLC*, the Pennsylvania Superior Court affirmed a trial court's denial of the plaintiff's motion for preliminary injunction, holding that the trial court did not err in finding that the plaintiff failed to establish irreparable harm absent preliminary relief.[72] Relevant here, both the trial court and the Superior Court rejected the plaintiff's argument that "it is longstanding law of Pennsylvania that any trespass to, or deprivation of, a real property interest constitutes immediate irreparable harm *per se* and does not require any further showing."[73] The Superior Court held instead that to obtain injunctive relief, the plaintiff needed to present evidence establishing irreparable harm, but the plaintiff failed to do so.[74] This ruling accords with two separate opinions by my colleague Judge Malachy E. Mannion declining to order injunctive relief because the alleged injuries (deprivations of property rights) were compensable with monetary damages.[75]

---

[72] 2019 WL 6330587, at *9 (Pa. Super. Nov. 26, 2019).
[73] *Id*. at *5 (internal quotation marks, brackets, and emphasis omitted).
[74] *Id*. at *5–6.
[75] *See Reisinger v. Cronauer*, 2019 WL 3302242, at *3–4 (M.D. Pa. July 23, 2019) (Mannion, J.) (denying the plaintiff's motion for preliminary injunction to prevent the defendant from "taking possession of his house" because, among other things, the "plaintiff has not shown immediate irreparable harm since monetary damages would be adequate to compensate him"); *Gangoo v. Federal Home Loan Mortgage Co.*, 2017 WL 679972, at *5–6 (M.D. Pa. Feb. 21, 2017) (Mannion, J.) (denying the plaintiff's motion for injunctive relief barring his eviction from his property because, among other things, the "plaintiff has not shown immediate irreparable harm since monetary damages would be adequate to compensate him").

Accordingly, the Plaintiffs' motion for a preliminary injunction succeeds only if they make the factual showing required to establish that they will suffer irreparable harm absent immediate court intervention. When considering an interference with the real property of another, a determination of irreparable harm "flows from the owner's inability to make better use of the site, or the owner's lack of control over features, fixtures, and equipment located on the site."[76] Therefore, to establish that the alleged interference with real property constitutes an irreparable harm, the Plaintiffs must show that they can "no longer make productive use of [their] property."[77]

Here, the Plaintiffs do not argue that the Defendants' continued use of the right-of-way prevents them from accessing their property. Instead, the Plaintiffs claim, without explanation or factual support, that the Defendants' activities on Cinder Hill Road will make "the roadway dangerous and unusable for [the] Plaintiffs."[78] But that won't do.

First, it is unclear whether the Defendants' access to the right-of-way poses any risk of damage to the road. According to the Defendants, aside from a trailer to haul a piece of equipment to and from the Timberlands to perform work required in advance of a planned sale in 2023, no heavy trucks will be operated on the right-

---

[76] *7-Eleven Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 631 (E.D. Pa. 2013) (citation omitted).
[77] *Id.*
[78] Doc. 4 at 13.

17

of-way in connection with the Defendants' business until at least 2023.[79] Instead, "[the] Defendants, their agents, contractors, and prospective bidders will traverse the [right-of-way] in passenger vehicles and pickups just as will [the] Plaintiffs and their invitees."[80] As the Defendants argue, the Plaintiffs "have not demonstrated and cannot demonstrate any risk of irreparable harm resulting from continued use of the [right-of-way] by passenger vehicles and pickups."[81]

Second, to the extent the Defendants' use of the right-of-way does pose a risk of damage to the road, the Plaintiffs have not shown that the likely damage will prevent them from "mak[ing] productive use of [their] property."[82] By the Plaintiffs' admission, they have "on repeated occasions"—dating back to 2020 at the latest—"advised 730 Texas or GreenWood (as the 730 Texas Property manager) that their subject portions of Cinder Hill Road required repair."[83] If the Defendants' alleged failure to repair the road as requested was significantly impinging on the Plaintiffs' use of their property, they presumably would have no difficulty presenting evidence showing how, exactly, they have been affected. They have failed to do so.

Indeed, at the August 2022 hearing, Plaintiff Laudermilch acknowledged that he recently constructed a new building on his property—a pole barn

---

[79] Doc. 18 at 12.
[80] *Id.*
[81] *Id.*
[82] *7-Eleven*, 926 F. Supp. 2d at 631.
[83] Doc. 1 ¶ 32.

containing a small residential space (equipped with a kitchenet and a bathroom) and a garage.[84] Laudermilch testified that for the construction of this building, heavy vehicles, including a cement mixer, entered his property from Cinder Hill Road (i.e., via the roadway covered by the ROW Agreement).[85] This testimony raises serious questions about whether the subject portion of Cinder Hill Road is in as bad a condition as the Plaintiffs claim. But more to the point, it repudiates the Plaintiffs' argument that injunctive relief is necessary to avoid irreparable harm: because the Plaintiffs have been able to complete large-scale construction projects on their properties (which necessarily involves heavy vehicle traffic across the subject portion of Cinder Hill Road), they have not proven by a preponderance of the evidence that the Defendants' continued access to the right-of-way prevents the Plaintiffs from making productive use of their properties.[86]

## IV.   CONCLUSION

To obtain injunctive relief, the Plaintiffs must demonstrate both a reasonable probability that their claims will succeed and that they will more likely than not suffer irreparable harm absent court intervention. They have shown neither.[87] Accordingly, the Plaintiffs' motion for a preliminary injunction is denied.

---

[84] Doc. 24.
[85] *Id*.
[86] *See 7-Eleven*, 926 F. Supp. 2d at 631.
[87] Separately, in the Court's estimation, it seems that an injunction preventing the Defendants from accessing the right-of-way would be counterproductive for all parties involved. The Plaintiffs want the roadway repaired so they can continue accessing their properties without difficulty. The Defendants want to perform the necessary roadway maintenance so they can

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

complete a prospective sale in 2023. Although the parties disagree about what maintenance is required, there is no dispute that *some* maintenance serves all their interests. A preliminary injunction preventing the Defendants from accessing (and, thus, performing maintenance on) the right-of-way would result in further degradation of the roadway without moving the parties closer to a reasonable resolution of this seemingly resolvable dispute.