**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DAVID LAUDERMILCH and
ERIC ROD,

              Plaintiffs,

     v.

730 TEXAS TIMBERLANDS, II,
LTD., and GREEN WOOD
RESOURCES, INC.,

             Defendants.

No. 4:22-CV-00423

(Chief Judge Brann)

**MEMORANDUM OPINION**

**OCTOBER 13, 2023**

David Laudermilch and Eric Rod assert that they are owners of plots of land
in Potter County, Pennsylvania, that are burdened by a right of way easement that
permits 730 Texas Timberlands, II, Ltd. ("730 Texas") and GreenWood Resources,
Inc. ("GreenWood")—the owner of certain timberland and the corporation
contracted to manage it—to access otherwise landlocked timberland in that area.
Defendants have moved for summary judgment, arguing that Rod is not an owner of
any land burdened by the easement, and certain indispensable parties have not been
added to this case, meaning that all claims must be dismissed. There is a distinct
dearth of evidence that could establish Rod as the owner of relevant property and, in
any event, the record establishes that certain indispensable parties have not been
joined to this action, and therefore Rod's claims in this matter must be dismissed.

However, no such issues exist as to Laudermilch, and his claims may therefore proceed. Accordingly, after construing Defendants' motion as a motion to dismiss, the Court will grant in part that motion.

## I.    BACKGROUND

In 2022, Laudermilch, Rod, and John T. Wolfe filed a complaint against Defendants, alleging breach of contract and seeking declaratory judgment holding that Defendants are responsible for maintaining Cinder Hill Road under a Right of Way Agreement ("ROW Agreement") and that Defendants have failed to adequately repair and maintain Plaintiffs' portions of Cinder Hill Road, in violation of the ROW Agreement.[1] Shortly thereafter, Plaintiffs filed a motion for a preliminary injunction, seeking to enjoin Defendants from accessing or using certain portions of Cinder Hill Road.[2] This Court denied that motion after finding that Plaintiffs had failed to demonstrate either a likelihood of success on the merits, or that they would suffer irreparable harm in the absence of an injunction.[3]

Defendants filed answers to the complaint,[4] and the matter proceeded through discovery, which was completed by April 3, 2023.[5] Prior thereto, Plaintiffs' counsel

---

[1]    Doc. 1.
[2]    Docs. 3, 4.
[3]    Docs. 27, 28.
[4]    Docs. 12, 13.
[5]    Doc. 33.

withdrew, leaving Plaintiffs to proceed *pro se*,[6] and Wolfe withdrew as a plaintiff, stating that he wished "to [no] longer . . . have any participation with this case."[7]

Defendants have now filed what they term a motion for summary judgment.[8] Despite labeling the motion as one for summary judgment, "a court is not bound by the procedural labels attached to the proceeding by the moving party,"[9] and Defendants plainly move to dismiss the complaint. First, Defendants openly acknowledge that they move to dismiss certain claims for failure to join necessary parties, pursuant to Federal Rule of Civil Procedure 12(b)(7).[10] Second, although Defendants purport to seek summary judgment based on Rod's lack of standing, "standing is a threshold jurisdictional requirement," and the absence of standing would render the Court powerless to grant judgment against any party who lacks standing.[11] That argument is therefore best construed as a motion to dismiss for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).[12]

As to their specific arguments, Defendants first argue that Rod has no standing to pursue this action because he cannot establish that he owns any property subject

---

[6]   Docs. 37, 38.
[7]   Doc. 39.
[8]   Doc. 40.
[9]   *Interdynamics, Inc. v. Firma Wolf*, 698 F.2d 157, 165 (3d Cir. 1982).
[10]   Doc. 41 at 9.
[11]   *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 855 (3d Cir. 2022).
[12]   *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter").

to the ROW Agreement.[13] While Rod claims to own 368 Cinder Hill Road, Defendants assert that the evidence establishes that the property is owned by other individuals; consequently, Rod is not a party to the ROW Agreement, and has no standing to attempt to enforce that agreement.[14] Second, Defendants assert that all claims must be dismissed due to the failure to join numerous required parties, pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19(a)(1).[15]

Rod has submitted documentation that he asserts demonstrates his ownership of 368 Cinder Hill Road, although Laudermilch has not responded to the motion for summary judgment, and the time to so do has now lapsed.[16] Defendants have filed a reply brief, rendering this matter ripe for disposition.[17] For the following reasons, the motion to dismiss will be granted in part.

## II.    DISCUSSION

### A.    Relevant Facts

730 Texas is the owner of a large plot of working timberland that is entirely landlocked and cannot be accessed by public road.[18] GreenWood manages the timberland on 730 Texas' behalf.[19]

---

13   Doc. 41 at 3-8.
14   *Id.*
15   *Id.* at 9-10.
16   Doc. 48.
17   Doc. 49. Rod has also filed, without authorization from the Court, a sur-reply brief. Doc. 50.
18   Doc 12 ¶ 2; Doc. 13 ¶ 2.
19   *Id.*

730 Texas and the owners of certain properties along Cinder Hill Road are successors in interest to the ROW Agreement—dated April 30, 1969—that provides Defendants with a right of way to use portions of Cinder Hill Road—a private, gravel road—to access the timberland owned by 730 Texas.[20] The ROW Agreement provides that 730 Texas is wholly responsible for maintaining the subject portions of Cinder Hill Road.[21] Several properties are burdened by the ROW Agreement, including properties owned by Wolfe, Laudermilch, and Wayne and Sandra Futty.[22]

Rod claims ownership of the property located at 368 Cinder Mill Road,[23] which is likewise burdened by the ROW Agreement, although records from the Tax Assessor of Potter County, Pennsylvania identify the owners of 368 Cinder Mill Road as other individuals.[24] Rod recorded a map (the "Map") and acknowledgment with the Recorder of Deeds of Potter County as instrument No. 2020003596, which describes the land that makes up 368 Cinder Mill Road.[25] Although the acknowledgement, signed by Rod, states that he is the owner of 368 Cinder Mill Road, the survey map describes the land as being owned by "MCGINN ET AL."[26] A note included in the Map states that the land is found "IN DEED BOOK 204 AT

---

[20]  *See* Doc. 4-1 at 3-4.
[21]  *Id.*
[22]  Docs. 1 ¶ 14, 40-5, 40-6 at 3.
[23]  Doc. 1 ¶ 15.
[24]  Doc. 40-3.
[25]  Doc. 40-1.
[26]  *Id.*

PAGE 140 IN POTTER COUNTY RECORDS AND WAS COMPLETED IN REFERENCE TO AN A.J. KICE SURVEY DATED AUG. 21, 1973 job #363."[27]

The deed referenced in the Map is dated May 1979 (the "1979 Deed") and identifies seven owners of 368 Cinder Mill Road, as tenants in common.[28] Those owners are listed as: James W. McGinn, James McGinn, Jr., Thomas J. Edinger, Richard E. Mueller, John P. Barron, Thomas K. Fulmer, and Raymond L. Fulmer.[29] Defendants assert, without supporting evidence, that "[t]here is no record in the office of the Recorder of Deeds of Potter County reflecting the transfer of the ownership interest of any of the Record Owners to Rod or to anyone else."[30] The evidence establishes that, other than the Map, Rod has submitted no documents to the Office of the Recorder of Deeds of Potter County.[31]

## B.    Analysis

Defendants contend that Rod has not adequately demonstrated ownership of 368 Cinder Mill Road and, therefore, he must be dismissed as a plaintiff in this matter.[32] Defendants further assert that all claims must be dismissed due to the failure to join numerous required parties.[33] The Court will address these arguments in turn.

---

[27]   *Id.* at 3.
[28]   Doc. 40-2.
[29]   *Id.* at 2.
[30]   Doc. 40 at 3.
[31]   Doc. 49-1 at 4.
[32]   Doc. 40 at 3-8.
[33]   *Id.* at 9-10.

### 1.      Ownership of 368 Cinder Mill Road

The Court first examines whether Rod owns 368 Cinder Mill Road and, therefore, has standing to pursue any claims related to that property. "Article III standing is a threshold jurisdictional issue that 'may be raised any time during a lawsuit (including for the first time on appeal).'"[34] "The plaintiff bears the burden of proving standing."[35]

"To establish Article III standing, a plaintiff must allege "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."[36] "[T]o state an injury-in-fact, a plaintiff must allege the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical."[37] "In turn, a harm is particularized if it affects the plaintiff in a personal and individual way. It is concrete if it is *de facto*; that is, it must actually exist rather than being only abstract."[38]

The record makes clear that Rod does not own 368 Cinder Mill Road. Despite this Court having granted Rod extensions of time to obtain and provide the Court

---

[34]  *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *2 (3d Cir. Apr. 18, 2023) (quoting *Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 130 (3d Cir. 2021)).

[35]  *Finkelman v. Nat'l Football League*, 877 F.3d 504, 511 (3d Cir. 2017).

[36]  *Id.* at 510 (internal quotation marks omitted).

[37]  *Id.* (internal quotation marks omitted).

[38]  *Id.* (brackets and internal quotation marks omitted).

with a recorded deed demonstrating his ownership 368 Cinder Mill Road,[39] Rod has

submitted no such evidence. The most recent—and only—legally recorded deed that

has been provided to the Court is the 1979 Deed that lists seven owners of 368 Cinder

Mill Road as tenants in common: James W. McGinn, James McGinn, Jr., Thomas J.

Edinger, Richard E. Mueller, John P. Barron, Thomas K. Fulmer, and Raymond L.

Fulmer.[40] Rod has not submitted any deed for 368 Cinder Mill Road to the Office of

the Recorder of Deeds of Potter County.[41]

The evidence therefore establishes seven owners of 368 Cinder Mill Road—

none of whom are Rod. To rebut this evidence, Rod has submitted three signed

letters. One letter is from James McGinn, Jr., who states that he has no ownership

interest in 368 Cinder Mill Road and that "everything and all responsibility is in Eric

Rod's name."[42] However, this does not demonstrate that McGinn sold his ownership

interest in the property to Rod, nor does it establish that Rod has any ownership

interest in that property, only that he has some amorphous "responsibility" over 368

Cinder Mill Road.

Rod further provides a letter signed by Christina Edinger, who states that her

father Thomas Edinger died, and she therefore "sold his interests in [368 Cinder Mill

---

[39]   Docs. 45, 47.
[40]   Doc. 40-2.
[41]   Doc. 49-1 at 4.
[42]   Doc. 48-1 at 1.

8

Road] on September 7th, 2009, to Mr. Eric Rod for $1.00."[43] However, Thomas Edinger's certificate of death states that he died on February 18, 2013—more than three years after Christina Edinger purportedly sold his interest in 368 Cinder Mill Road.[44] Absent some competent evidence that Christina Edinger exercised power of attorney over Thomas Edinger's property in 2009, that letter does not demonstrate that Rod acquired Thomas Edinger's ownership interest in 368 Cinder Mill Road.

Finally, Rod provides a signed letter from Richard Mueller's daughter, Donna Mueller Corey, stating that Richard Mueller's ownership "interest in [368 Cinder Mill Road] was sold by me on September 10, 2009, to Mr. Eric Rod for $1.00."[45] However, this letter too suffers from a fatal flaw; Richard Mueller's certificate of death shows that he died on June 17, 2018, nearly nine years after Corey purportedly sold Mueller's ownership interest in 368 Cinder Mill Road.[46] There is no evidence that Corey had the legal authority to conduct such a sale and, therefore, no competent evidence that Rod ever acquired Richard Mueller's ownership interest in 368 Cinder Mill Road. Accordingly, Rod has failed to sustain his burden of demonstrating that he has any ownership interest in 368 Cinder Mill Road.

Because Rod is not an owner of 368 Cinder Mill Road, he cannot demonstrate injury-in-fact. First, as to Rod's breach of contract claim, he must demonstrate three

---

[43]  Doc. 48-7 at 1.
[44]  *Id.* at 2.
[45]  Doc. 48-9 at 1.
[46]  *Id.* at 2.

things: "[that] a contract exists, including its essential terms; (2) [that] there was a breach of the duty imposed by the contract; and (3) [that] there are resultant damages."[47] Rod cannot establish that he suffered damages from any purported breach of the ROW Agreement, since he has not demonstrated that he actually owns any property burdened by the ROW Agreement. Of equal importance, "ordinarily, only parties to a contract may avail themselves of its benefits" and seek to enforce its provisions, except under the limited circumstances "where an agreement confers benefits on a third party, [in which case] party may enforce it under a third-party beneficiary theory."[48] The ROW Agreement does not confer benefits to Rod as a third party, and he therefore has no legal standing under which to seek enforcement of the ROW Agreement.

As to Rod's declaratory relief count, "the Declaratory Judgment Act 'is not an independent source of federal jurisdiction'" but, "'[r]ather, the availability of declaratory relief presupposes the existence of a judicially remediable right.'"[49] Consequently, in the absence of any underlying cognizable right, a claim for declaratory relief may not lie.[50] Because Rod is not a party to the ROW Agreement,

---

[47] *Best v. United Steel Paper & Forestry Rubber Mfg. Energy Allied Indus. & Serv. Workers Int'l Union*, 299 A.3d 1043, 1052 (Pa. Commw. Ct. 2023).

[48] *City of Arnold v. Wage Pol'y Comm. of City of Arnold Police Dep't*, 171 A.3d 744, 758 n.2 (Pa. 2017) (Saylor, C.J., concurring).

[49] *Perrigo Rsch. & Dev. Co. v. U.S. Food & Drug Admin.*, 290 F. Supp. 3d 51, 63 (D.D.C. 2017) (quoting *C & E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002); *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)).

[50] *E.g., Cont'l Cas. Co. v. Crum & Forster Specialty Ins. Co.*, No. 2:20-CV-3843 (WJM), 2021 WL 268175, at *3 (D.N.J. Jan. 27, 2021).

he has no "judicially remediable right" to enforce that agreement,[51] and would suffer no injury from Defendants' alleged failure to abide by that agreement. Moreover, because Rod does not own property that is burdened by the ROW Agreement, he cannot "demonstrate that the probability of [harm to him based on Defendants' failure to abide by the ROW Agreement] is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[52]

In sum, because Rod has not established that he has any ownership interest in 368 Cinder Mill Road, he has not demonstrated injury-in-fact sufficient to provide standing in this matter. He must therefore be dismissed from this matter for lack of standing.

## 2.    Joinder of Necessary Parties

The Court next turns to Defendants' assertion that the complaint should be dismissed for failure to join all necessary parties, pursuant to Federal Rule of Civil Procedure 12(b)(7). On a motion to dismiss pursuant to Rule 12(b)(7), "[t]he burden of proof starts with the movants, but if at first glance it appears a possibly necessary party is absent, the burden shifts to the nonmovant to dispute that initial appraisal of the facts."[53]

---

[51] *Perrigo Rsch. & Dev. Co.*, 290 F. Supp. 3d at 63.
[52] *Sherwin-Williams Co. v. Cnty. of Delaware, Pa.*, 968 F.3d 264, 272 (3d Cir. 2020) (internal quotation marks omitted).
[53] *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 266 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1054, 215 L. Ed. 2d 279 (2023).

Federal Rule of Civil Procedure 19(a) provides that certain persons must be joined in an action if feasible. That Rule "defines a 'Required Party' in terms of jurisdictional prerequisites followed by prudential considerations."[54] "For starters, a required party may only be '[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction.'"[55]

> Assuming jurisdiction, an absent person becomes a required party only when: 1) "the court cannot accord complete relief" without him, or 2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

> Translated, there are some persons, real or corporate, not a party to a suit who, for prudential reasons, should be joined in an action. Perhaps their absence prevents a court from awarding full relief to the existing parties. Or they claim to have an interest in the dispute that will be harmed by a judgment. Or a bit of both scenarios, meaning a judgment in their absence will create inconsistent obligations and still more litigation. If a federal court has power over these persons—that is, if they meet the jurisdictional prerequisite—they are "required" missing parties and must be joined.[56]

"Subsection (a)(1)(A) is limited to considerations of whether the court can grant complete relief to persons already named; the effect on unnamed parties is

---

[54] *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 229 (3d Cir. 2023).
[55] *Id.* (quoting Fed. R. Civ. P. 19(a)(1)).
[56] *Id.* (quoting Fed. R. Civ. P. 19(a)(1) (ellipses and internal citations omitted)).

immaterial."[57] Conversely, subsection (a)(1)(A) "requires the court to take into consideration the effect the resolution of the dispute may have on absent parties."[58]

"Under the first prong of subsection (a)(1)(B), a party must show that some outcome of the federal case would preclude the absent parties with respect to an issue material to the absent parties' rights or duties."[59] "An assertion that a disposition would amount to persuasive precedent, however, is not sufficient" nor are "concerns regarding privity and the possibility of preclusion."[60] "The second prong of (a)(1)(B) focuses on the obligations of named parties, not absent parties."[61] "Further, an unsubstantiated or speculative risk will not satisfy Rule 19(a) criteria—the possibility of exposure to multiple or inconsistent obligations must be real."[62]

Judged by these standards, even if Rod had established partial ownership of 368 Cinder Mill Road, any claims must be dismissed because there remain required parties who have not been joined—those being the other partial owners of 368 Cinder Mill Road.[63] Here, Rod seeks to establish Defendants' obligations and

---

[57] *Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 F. App'x 135, 145 (3d Cir. 2010).

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] There is no "non-party that 'claims an interest'" here, as the other owners of 368 Cinder Mill Road have "never offered a position" on this matter; nevertheless, this Court "should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest" in this matter. *Epsilon Energy*, 80 F.4th at 233 (quoting Fed. R. Civ. P. 19(a)(1)(B)(i)).

liabilities with respect to the maintenance of the road in front of 368 Cinder Mill Road. Any such action will by necessity determine the rights of all owners of that property, and any ruling would have preclusive effect as to all owners of that property.

Even assuming that Rod's evidence could establish that he acquired ownership interests in 368 Cinder Mill Road from James W. McGinn, James McGinn, Jr., Thomas J. Edinger, and Richard W, Mueller,[64] Rod has submitted no evidence that he ever acquired the ownership interests of John P. Barron, Thomas K. Fulmer, or Raymond L. Fulmer (the "Non-Joined Owners"), all of whom are listed on the 1979 Deed as tenants in common for 368 Cinder Mill Road.[65] Absent joinder of these individuals, any "determination of the rights of those persons named as parties to the action would impair or impede [the Non-Joined Owners'] ability to protect [their] interest in the subject matter of the litigation."[66] For example, were this Court to find that Defendants have fulfilled their duty to adequately maintain Cinder Mill Road as it pertains to 368 Cinder Mill Road, the Non-Joined Owners would effectively be prohibited from contesting that finding in any functional way. Those individuals are therefore necessary to Rod's claims, and dismissal would be appropriate for failure to join them, if Rod had standing to pursue his claims.

---

[64] *See* Docs. 48-1, 48-7, 48-9.
[65] Doc. 40-2.
[66] *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 316 (3d Cir. 2007).

The same cannot be said, however, regarding Laudermilch's claims. First, there is no indication that Laudermilch shares ownership of his property with any other individual(s), such that those individuals must be joined to this action. Second, it does not appear that other owners of land who are subject to the ROW Agreement are needed to fully litigate Laudermilch's claims. As the complaint makes clear, Laudermilch and Rod allege "that their subject portions of Cinder Hill Road were in disrepair and required significant maintenance."[67] And Rod explains in one of his papers that other owners of land subject to the ROW Agreement have not joined this litigation "due to there being no damage to their property."[68]

These averments demonstrate that Laudermilch—as the only remaining plaintiff—seeks to vindicate his rights as to his property only. A determination as to whether Defendants have failed to adequately maintain Laudermilch's property would necessarily be fact specific, based on the actual damage to his property. Any suit brought by a different landowner subject to the ROW Agreement would depend on different facts and would present different interests, meaning that any decision here would not have preclusive effect in their lawsuit, and those individuals therefore are not necessary parties to this action.[69]

---

[67] Doc. 1 ¶ 6. *See id.* ¶¶ 31-32, 44.
[68] Doc. 50 at 2.
[69] *Huber v. Taylor*, 532 F.3d 237, 250-51 (3d Cir. 2008).

15

Similarly, while the Court "must decide whether continuation of the action would expose named parties to the substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest,"[70] such concerns are not present here. As noted above, Laudermilch seeks to vindicate his rights as to his property alone. Given that any determination of whether Defendants failed to properly maintain that property will be fact specific and without any effect on the rights or interests of other property owners who are subject to the ROW Agreement, there is no danger that Defendants would be subject to inconsistent or multiple obligations. As such, Laudermilch has not failed to join any necessary parties, and Defendants' motion to dismiss his claims will be denied.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant in part Defendants' motion to dismiss and will dismiss any claims brought by Rod in this matter.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[70]   *Gen. Refractories*, 500 F.3d at 317.